# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DR. M. NAFEES NAGY, *et al.*,

Plaintiffs,

v.

GENE GROBSTEIN, *et al.*,

Defendants.

Case No. 2:04-CV-01244-KJD-LRL

**ORDER**

Presently before the Court is Plaintiffs' Motion for Damages and Attorneys' Fees (#44). Defendant Gene Grobstein filed a response in opposition (#46) to which Plaintiffs replied (#47).

I. Background and Procedural History

The Plaintiffs, a married couple, sought project financing options through a business advisor, Fredrick Waid. While searching for additional project financing, Waid became acquainted with the defendants, Octomar Insurance Company ("Octomar"), Gene Grobstein ("Grobstein"), and P.A. Hemmesthorp ("Hemmesthorp"). Defendants offered financial guarantee bonds (the "Bonds"). Defendants represented that the Bonds could be used to secure lines of credit from European banks and that using such financial guarantee bonds was a common financing technique in Western Europe. From these representations, Plaintiffs believed that the Bonds could be used to finance real estate development projects in the Las Vegas area. Before Plaintiffs purchased any bonds, Defendants

represented that a full refund was available upon request for any money paid before the finalization of the Bonds.

Plaintiffs entered into contracts to purchase two Bonds from Defendants Octomar and Grobstein valued at $15 million and $21 million respectively in exchange for $150,000 for each Bond. On or about October 11, 2001, Plaintiffs transferred $150,000 to accounts identified by Octomar and Grobstein. Half, or $75,000, was wire transferred to Octomar's HSBC Switzerland bank account and the other half was wire transferred to Grobstein's Wells Fargo bank account, constituting payment under the contract for the $21 million Bond. On January 22, 2002, Plaintiffs similarly transferred another $150,000 to Defendants Octomar and Grobstein as payment for the $15 million Bond. The only difference being the transfer to Octomar was made to their HSBC London account.

Plaintiffs never received their Bonds as promised. Instead, Defendants have made numerous representations and excuses for their delay in delivering the Bonds. On August 20, 2004, Plaintiffs demanded refund of the $300,000 they transferred to Defendants Octomar and Grobstein, but no refund was made. The Bonds have never been registered with the Securities and Exchange Commission or the Securities Division of the Nevada Secretary of State's Office.

Plaintiffs filed the present action on September 7, 2004. Plaintiffs filed their first amended complaint on September 15, 2004. On December 1, 2004, the Court granted Plaintiffs' *ex parte* motion for writs of attachment and garnishment. To date, Plaintiffs have recovered $42,000.00 from Defendant Grobstein's Wells Fargo accounts. Defendant Grobstein answered the complaint on April 11, 2005. Proof of service of summons and complaint upon Defendants Octomar and Hemmesthorp has never been filed with the Court.

On May 26, 2005, Plaintiffs filed their first motion for partial summary judgment seeking rescission of the $300,000.00 payment for the Bonds for Defendants' failure to register them under Nevada and federal law. On June 27, 2005, Grobstein submitted his opposition to the first motion. In his opposition, Grobstein contends that he acted under the name of an Arizona limited-liability

company. However, that company had not yet been formed at the time of the alleged actions in this case. Grobstein also admitted that he received wire transfers through his personal bank account. After briefing on the first motion had concluded, Grobstein retained new counsel, sought leave to file an amended answer, and an extension of time to file an additional opposition in response to the motion for summary judgment. The Court denied the motion to file an amended answer. Because discovery had not yet concluded at the time Plaintiffs filed their first motion for summary judgment, the Court denied the motion without prejudice. The Court did not grant Defendant Grobstein additional time to conduct discovery and did not amend the discovery and scheduling order.

On October 13, 2005 after the close of discovery, Plaintiffs filed a second motion for summary judgment on the claims for securities law violations and for unjust enrichment. On November 3, 2005, Defendant Grobstein filed his opposition to the motion solely on procedural grounds arguing that the motion was premature and that the Court had granted an extension of the discovery deadlines. On May 3, 2006, the Court granted Plaintiffs' motion for summary judgment on the issue of liability and invited a motion for damages. The Court also ordered Plaintiffs to file proof of service of the summons and complaint upon the remaining defendants in compliance with Federal Rule of Civil Procedure 4(m). However, Plaintiffs have failed to provide proof of service.

On May 17, 2006, Plaintiffs filed the present motion seeking to have the Court to award a final judgment for Plaintiffs in the amount of $475,385.73. The proposed judgment consists of $300,000 paid for the unregistered securities, $120,404.17 in pre-judgment interest, $10,026.31 in taxed costs (see #48), and $44,955.25 in attorneys' fees. Plaintiffs are also seeking an order exonerating the bond posted to uphold the pre-judgment writ of attachment (#6/7).

## II. Analysis

### A. Money Paid for Unregistered Securities

Defendant Grobstein's opposition alleges that factual issues require a trial in order to determine the damages. However, Grobstein has failed to produce specific facts, by affidavit or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Therefore, the Court finds that Grobstein should be jointly and severally liable for the amount of money paid for the unregistered securities, $300,000.00. See 15 U.S.C. § 77e(a)(1); Nev. Rev. Stat. 0.660(b),(f). While Defendant Grobstein complains that this is inequitable because the other defendants were never served, Grobstein never took any of the avenues available to protect his rights in this case. Grobstein never filed a cross-claim or an appropriate motion under Federal Rule of Civil Procedure 19. Therefore, the Court rejects Defendant's argument.

B. Pre-judgment Interest

Defendant Grobstein also claims, without stating why, that Plaintiffs are not entitled to prejudgment interest. Grobstein also argues that the federal rate should be used rather than the state rate. State law governs the award of pre-judgment interest, because this Court's jurisdiction is based upon diversity. See In re Cardelucci, 285 F.3d 1231, 1235 (9th Cir. 2002); Rio Properties, Inc. v. Stewart Annoyances, Ltd., 420 F. Supp.2d 1127, 1130-31 (D. Nev. 2006). Therefore, the Court finds that the Nevada statutory rate is the appropriate interest rate. See Nev. Rev. Stat.90.660(f).

C. Attorneys' Fees and Costs

The Court finds that the hourly rate claimed by counsel is reasonable and necessary in this jurisdiction. Furthermore, the Court finds that Plaintiffs have fully complied with Local Rule 54-16 in making application for attorneys' fees. Defendant's objections are denied, because Defendant failed to "set forth the specific charges that are disputed", and failed to include an affidavit to support contested facts. LR 54-16(e). Therefore, the Court awards Plaintiffs the full amount of attorneys' fees sought. Since the Bill of Costs have been taxed (#48) by the Clerk of the Court, the Court denies Defendant's objections to awarding costs as part of the judgment.

D. Exoneration of the Bond

Defendant has not filed points and authorities in opposition to Plaintiffs' motion to exonerate the bond. Therefore, in accordance with LR 7-2(d), the Court grants Plaintiffs' motion to exonerate the bond.

III. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Damages and Attorneys' Fees (#44) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Plaintiffs and against Defendant Gene Grobstein in the amount of $475,385.73;

IT IS FURTHER ORDERED that the bond is **EXONERATED**;

IT IS FURTHER ORDERED that Defendants Octomar Insurance Company, AG, and P-A Hemmesthorp are **DISMISSED without prejudice** in accordance with Federal Rule of Civil Procedure 4(m).

DATED this 15th day of August 2006.

Kent J. Dawson
United States District Judge